**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| RONALD R. HEGGEMEIER, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CIVIL NO. 1:13-CV-746-LY |
| | § | |
| CALDWELL COUNTY COMMISSIONERS | § | |
| COURT; COMMISSIONERS ALFRED | § | |
| MUNOZ, ERNESTO MADRIGAL, JOE | § | |
| ROLAND; AND CALDWELL COUNTY, | § | |
| TEXAS, | § | |
| DEFENDANTS. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:     THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

Before the Court are Defendants' Motion for Summary Judgment, filed December 23, 2014 (Clerk's Dkt. No. 41); Plaintiff's Response to Defendants' Motion for Summary Judgment, filed January 15, 2015 (Clerk's Dkt. No. 46); Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment, filed January 22, 2015 (Clerk's Dkt. No. 47); and Plaintiff's Sur-Reply in Opposition to Defendants' Motion for Summary Judgment, filed January 26, 2015 (Clerk's Dkt. No. 48).  The motion was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(c) of Appendix C to the Local Rules of the United States District Court for the Western District of Texas.

I.     **BACKGROUND**

On August 27, 2013, Plaintiff Ronald Heggemeier ("Plaintiff") filed this action, naming as defendants Caldwell County Commissioners Alfred Munoz, Ernesto Madrigal, and Joe Roland in

their individual capacities[1] (collectively, "the Commissioners"), the Caldwell County Commissioners Court ("Commissioners Court"), and Caldwell County, Texas ("Caldwell County" or "the County") (collectively, "Defendants"). On May 23, 2014, Plaintiff filed a Third Amended Complaint asserting claims for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and Chapter 554 of the Texas Government Code ("Chapter 554"). (Clerk's Dkt. No. 20).

Defendants now move for summary judgment. The parties have filed responsive pleadings and the matter is now ripe for determination.

## II. STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986)). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Davis v. Fort Bend Cty.*, 765 F.3d 480, 484 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden

---

[1] The official-capacity claims against the Commissioners have been dismissed as duplicative of those against the Commissioners Court. (Clerk's Dkt. No. 30).

then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 323; *Celtic Marine Corp. v. James C. Justice Co., Inc.*, 760 F.3d 477, 481 (5th Cir. 2014). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Celtic Marine*, 760 F.3d at 481 (citing *Celotex*, 477 U.S. at 325). Once the non-movant has been given the opportunity to present evidence to create a genuine issue of fact, the court will grant summary judgment if no reasonable juror could find for the non-movant. *Boos v. AT&T, Inc.*, 643 F.3d 127, 130 (5th Cir. 2011).

## III.    SUMMARY JUDGMENT FACTS[2]

Plaintiff, a Caucasian man, was employed as by Caldwell County as an Assistant Criminal District Attorney from March 2010 until October 1, 2011. (Pltf. Ex. A "Heggemeier Decl." at 1). On September 26, 2011, during a regular meeting, the Commissioner Fred Buchholtz ("Commissioner Buchholtz") moved the Commissioners Court to adopt the 2011–2012 budget. The proposed 2011–2012 budget would fund the creation of a position entitled "County Administrator for the Caldwell County Administrator department" ("County Administrator"). (Pltf. Ex. A-5; Pltf. Ex. G at 12, 17). According to the minutes of the meeting, Commissioner Madrigal "question[ed] creating new positions at this time" and "would like to be able to increase the raise amount for the employees." (Pltf. Ex. A-5). Commissioner Roland also stated he would like to allocate more funds for pay raises, but he did not specifically mention the creation of the County Administrator position. (*Id.*). Judge Tom Bonn ("Judge Bonn") and Commissioners Buchholtz and John Cryier ("Commissioner Cryier") voted "yes," Commissioners Madrigal and Roland voted "no," and the

---

[2] Plaintiff objects to a number of exhibits included in Defendants' motion for summary judgment. Specifically, Plaintiff objects to portions of Defendants' "list of undisputed facts" contained in the motion for summary judgment and objects to several newspaper articles attached to the motion. (Def. Exs. 13, 14, 15). However, the undersigned does not consider the "list of undisputed facts" as evidence in the analysis herein, nor are the newspaper articles considered, thus the objections are moot.

budget was adopted.[3]  (*Id.*).

Plaintiff thereafter was hired to be County Administrator on October 1, 2011.[4]  (Heggemeier Decl. at 1–2).  His responsibilities included overseeing and implementing broad policy direction from the Commissioners Court, and directly managing eight Caldwell County Departments.  (Def. Ex. 5).  The County Administrator position also carried "overall responsibility and authority for the business and service delivery aspects of the County Government."  (*Id.*).  Plaintiff also assisted Judge Bonn in the preparation of each fiscal year budget.  (Heggemeier Decl. at 3).

During the course of his employment with Caldwell County, Plaintiff believed the County's insurance policy violated the ADEA.  The County pays a portion of dependent health benefit coverage for dependent children of Caldwell County employees.  (Def. Exs. 6-1, 6-2, 6-2).  Plaintiff maintains this policy disparately impacts older employees as compared to younger employees because older employees are supplemented with fewer County dollars per capita.  Plaintiff states he opposed this practice as age discrimination, and that he reported the age discrimination to the Commissioners Court on August 29, 2011.  (Def. Ex. 17 at 6–7).

Also while he was employed by the County, Plaintiff discovered what he contends to be a violation of law by the County.  According to Plaintiff, the County was operating software for which it had not purchased the appropriate software licenses, which Plaintiff believes is a theft of services.  Plaintiff reported the purported theft to Assistant District Attorney Mack Harrison ("Harrison").  (Heggemeier Decl. at 2).  On March 18, 2013, Plaintiff attended a Commissioners Court executive session with Harrison.  (*Id.* at 2–3).  Plaintiff contends that during the executive session, Harrison

---

[3]  Commissioner Munoz was not yet a member of the Commissioners Court at the time the 2011–2012 budget was adopted.

[4]  Plaintiff, as the County Administrator, was the sole employee in the County Administrator department.

notified the Commissioners Court of the purported theft and the potential legal consequences of theft.  (*Id.* at 3; Def. Ex. 17 at 7).

On May 20, 2013, the Commissioners Court voted to eliminate the Indigent Health Services Department.  (Pltf. Ex. A-7).  Rhonda Chavira ("Chavira"), a Hispanic woman, was the head of the Indigent Health Services Department.  (Def. Ex. 11 at 7).  Commissioner Munoz moved to eliminate Chavira's position effective May 31, 2013 because the County entered into a contract with Seton Healthcare for indigent healthcare services and there was a lack of work for Chavira to do.  (*Id.*).  Judge Bonn requested the Commissioners Court extend Chavira a settlement package that would provide her pay and benefits through the end of the fiscal year so she could seek other employment.  (*Id.*).  Commissioner Munoz disagreed, and Commissioner Buchholtz offered a compromise to change the date to June 30, 2013.  The Commissioners unanimously voted "yes" to remove Chavira from her position and offer an extension of pay and benefits through June 30, 2013, and the motion passed.  Judge Bonn voted "no."  (*Id.*).

On May 28, 2013, the Commissioners Court voted to eliminate the County Administrator department, which consisted solely of Plaintiff.  (Pltf. Ex. A-8).  During a regular meeting, Commissioner Roland moved to abolish the County Administrator department effective May 31, 2013.  (Def. Ex. 12 at 5).  He explained that as a taxpayer and Commissioner, he "felt the position was not needed in a county of our size" and that he felt it was a "duplication of Office."  (*Id.*).  He proposed that the funds used to pay Plaintiff be shifted to the Unit Road Department, which is responsible for maintaining roads in Caldwell County.  (*Id.*; Def. Ex. 1 "Madrigal Depo." 18:8–11).  Commissioner Madrigal seconded the motion to abolish the County Administrator department.  (Def. Ex. 12 at 5).

Commissioner Buckholz opposed the motion, stating that Plaintiff is in a "protected class"

5

and his termination "cost the County 5 years and over $800,000." (*Id.*). Judge Bonn also opposed the motion, cautioning that Commissioner Roland will be "opening the door for a lawsuit." (*Id.*). Commissioner Munoz disagreed, stating that the citizens and voters are the Commissioners Court's "bosses." (*Id.*). Judge Bonn countered that Plaintiff has saved the County tax dollars and recited a list of the County Administrator department's accomplishments. (*Id.*). Commissioners Munoz, Madrigal, and Roland voted "yes" to eliminate the County Administrator department, Judge Bonn and commissioner Buchholtz voted "no," and the motion passed. (*Id.*). There was no motion to extend Plaintiff's pay or benefits, and his position was abolished May 31, 2013. (*Id.*; Heggemeier Decl. at 2).

## IV.   ANALYSIS

Plaintiff maintains the Commissioners Court abolished his department with three-days notice and without extending his pay or benefits (hereinafter, "severance package") because of his race, in violation of Title VII. He further contends his position was eliminated in retaliation for his opposition to the County's dependent health-benefit coverage program as age discrimination, in violation of the anti-retaliation provision of the ADEA. Plaintiff finally argues his position was eliminated in retaliation for his good-faith reports of the Commissioners Court's theft of services, in violation of Chapter 554.

### A.   Title VII Race Discrimination Claim

Under Title VII, an employer may not "discharge any individual . . . because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Plaintiff may prove the requisite intentional discrimination using either direct or indirect evidence. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 508 (5th Cir. 2014). If direct evidence is unavailable, as is typically the case, the plaintiff may create an inference of discrimination by using the burden-shifting

6

framework enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

> 1.    *Direct Evidence Analysis*

Direct evidence of discrimination is evidence that proves the defendant acted with discriminatory intent, without the need for inference or presumption. *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citing *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)). A plaintiff who offers "sufficient direct evidence of intentional discrimination should prevail, just as in any other civil case where a plaintiff meets his burden." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 40 (5th Cir. 1996) (citing *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 n.6 (5th Cir. 1994)).

Plaintiff offers as direct evidence of discrimination Judge Bonn's deposition testimony and the Commissioners' failure to follow the County's policy for a reduction in force. Judge Bonn testified that the Commissioners gave Chavira more notice of her termination because she is Hispanic, which Judge Bonn believes is bolstered by the Commissioners' membership in the "racist" Tejano Democratic Party. (Pltf. Ex. C "Bonn Depo." 48:1–7, 48:14–18). He testified, "Well, you've got two Hispanics [Commissioners Madrigal and Munoz], one Black [Commissioner Roland], all of the Tejano Democrat Party, and they protect their own." (Bonn Depo. 48:11–13). Judge Bonn asserted the Tejano Democrats is a party "in this county that [is] bonded together by race. Now, you've heard earlier that there are people in that organization that aren't Hispanic, but they don't get on the ballot unless they join that organization." (Bonn Depo. 43:1–24).

However, the minutes of the May 20 and 28, 2013 Commissioners Court meetings clearly indicate Judge Bonn himself moved to extend Chavira's pay through the end of the fiscal year, and he did not move to extend Plaintiff's pay at all. (Pltf. Exs. A-7, A-8). In fact, Commissioners

Munoz and Roland moved to terminate Chavira's employment effective May 31, 2013, and Commissioner Munoz opposed extending Chavira's pay through the end of the fiscal year. Judge Bonn's allegations are therefore conclusory and unsupported by the record. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007) (plaintiff must offer specific evidence, rather than conclusory allegations); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (same). Unsubstantiated beliefs are insufficient to create a genuine issue of material fact precluding summary judgment. *Lohn v. Morgan Stanley DW, Inc.*, 652 F. Supp. 2d 812, 822 (S.D. Tex. 2009) (unsubstantiated and subjective beliefs are not competent summary judgment evidence).

Plaintiff next argues the Commissioners Court failed to follow its own policy when abolishing the County Administrator position, which according to Plaintiff is "direct evidence of disparate treatment" and "compelling evidence of discriminatory intent."[5] (Pltf. Resp. at 18–19). Personnel Policy § 13.04 requires the Commissioners Court to consider four factors before a reduction in force: (1) the relative necessity of each position to the organization; (2) the performance record of the employee; (3) the qualifications of the employee for remaining positions within the County; and (4) the employee's length of service within the County. (Pltf. Ex. A-4).

As Defendants note, "A defendant's failure to follow its own policy is not probative of discriminatory animus in absence of proof that the plaintiff was treated differently than other [] minority employees because Title VII does not protect employees from the arbitrary employment practices of their employer, only their discriminatory impact." *Turner*, 476 F.3d at 346 (quoting *Upshaw v. Dall. Heart Grp.*, 961 F.Supp. 997, 1002 (N.D. Tex. 1997)). Although Plaintiff argues in his response to the motion for summary judgment that "the four criteria were considered by the

---

[5] Although Plaintiff characterizes the alleged policy violation as "direct evidence," the undersigned finds it is more appropriately categorized as indirect evidence of discrimination or pretext. Nevertheless, the analysis for a defendant's failure to follow its own policy remains the same.

Commissioner's Court in the Rhonda Chavira separation, but not in Ron Heggemeier's," Plaintiff points to no evidence that the Commissioners Court considered the four factors for Chavira. The only deposition testimony that might support that contention is Commissioner Munoz's. Counsel for Plaintiff asked Commissioner Munoz if he discussed the four factors with the Commissioners Court when deciding whether to abolish Chavira's position. In response, Commissioner Munoz stated, "If that's what the minutes show, [] I suppose so. I don't [] remember." (Munoz Depo. 51:7–12). A review of the minutes does not show the four factors were considered in Chavira's situation. (Pltf. Ex. A-7). The failure to consider the four Personnel Policy factors in Plaintiff's case is therefore insufficient to show discrimination. *See Turner*, 476 F.3d at 346 (absent showing that policy was followed for another employee outside of plaintiff–employee's class, failure to follow policy is insufficient).

Accordingly, Plaintiff has failed to present "sufficient direct evidence of intentional discrimination." *Nichols*, 81 F.3d at 40. As the remaining evidence offered by Plaintiff is offered as indirect evidence of discrimination, the undersigned will conduct the *McDonnell Douglas* analysis to determine whether Plaintiff has established a violation of Title VII.

2.    *McDonnell Douglas Indirect Evidence Analysis*

To establish a prima facie case of discrimination under *McDonnell Douglas*, the plaintiff must show (1) he is member of a protected class; (2) he was competently performing in his position with the employer; (3) he was subject to an adverse employment action; and (4) he was treated less favorably than other similarly situated employees outside his class. *McDonnell Douglas*, 411 U.S. at 802; *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411–12 (5th Cir. 2007).

Once the plaintiff establishes the four *McDonnell Douglas* elements, a presumption of intentional discrimination is created. *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

The burden then shifts to the employer to "articulate a legitimate, non-discriminatory reason for the adverse employment action." *Willis v. Coca Cola Enter.*, 445 F.3d 413, 420 (5th Cir. 2006) (citing *Johnson v. Louisiana*, 351 F.3d 616, 621 (5th Cir. 2003)). If the employer carries this burden of production, the presumption of discrimination created by the plaintiff's prima facie case "drops out of the picture" and the burden shifts back to the plaintiff to establish intentional discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511–12 (1993). Thus, to survive summary judgment, the plaintiff must raise a fact issue as to whether the employer's proffered reason was mere pretext for discrimination. *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004); *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000).

i.     Prima Facie Case

It is undisputed that Plaintiff is Caucasian and suffered an adverse employment action when the County Administrator department was abolished. It is also undisputed that Plaintiff was qualified to perform his job, and performed his job well. Additionally, it is undisputed that Plaintiff was given three-days notice prior to his termination, while Chavira, who is Hispanic, was given 41-days notice and a severance package. It therefore has been shown that a Hispanic employee of Caldwell County was treated more favorably than Plaintiff, a Caucasian employee of Caldwell County. Accordingly, the only disputed issue is whether Plaintiff and Chavira were similarly situated in their employment with Caldwell County.

"[Courts] require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'" *Lee,* 574 F.3d at 260 (quoting *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991) (internal quotation marks omitted)); *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 901 (5th Cir. 2002); *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001). "Nearly

10

identical" means the employees being compared held the same job or responsibilities, had same supervisor or determiner of employment status, and essentially comparable work histories. *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012). However, a plaintiff need not show the circumstances of the employment and termination were actually identical to that of the comparator. *Id.*

Plaintiff points out that both Chavira and Plaintiff were department heads, and both of their departments were abolished by the Commissioners Court due to a reduction in force. Plaintiff further contends that Defendants merely offer conclusory allegations regarding Chavira's job duties and history. Defendants offer sworn deposition testimony from Commissioners with personal knowledge of Chavira's position. As Defendants note, Chavira had been employed by the County for 20 years, was employed in a different department than Plaintiff, and had been "floating" between departments for several months. (Madrigal Depo. 40:1–41:12). Further, Chavira's position was eliminated because indigent health services for the County had been contracted to Seton Healthcare. Contrastingly, Plaintiff had been employed in his position for less than two years, had different job duties, and his position was apparently eliminated due to budgetary concerns. The undersigned disagrees that the evidence offered by Defendants are conclusory allegations. Rather, Plaintiff has offered little evidence that "the employees being compared held the same job or responsibilities." *Crosby v. Computer Sci. Corp.*, 470 F. App'x 307, 309 (5th Cir. 2012) (quoting *Lee*, 574 F.3d at 260). There are also "substantive differences in employment history," namely 17 years, that "adequately explain the disparate treatment." *Vann v. Mattress Firm, Inc.*, 2014 WL 4677459, at *8 (S.D. Tex. Sep. 18, 2014) (quoting *Wallace Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001)).

Plaintiff also points out "it is sufficient that the ultimate decisionmaker as to employees'

11

continued employment is the same individual, even if the employees do not share an immediate supervisor." *Lee*, 574 F.3d at 261. The Commissioners Court was in fact the ultimate decisionmaker in deciding to abolish both departments and give Chavira 41-days notice and Plaintiff three-days notice. However, as Plaintiff concedes, the context in which the Fifth Circuit made this statement is key. In *Lee*, the plaintiff and his comparator were both train engineers, who had "committed a like number of moving violations." *Id.* The court reasoned "[the two employees] are similarly situated . . . . They held identical positions [], compiled a similar number of serious moving violations over a similar period of time . . . , and their ultimate employment status rested with the same person." *Id.* at 261–62.

Although the undersigned "do[es] not . . . interpret "nearly identical" as synonymous with "identical," the evidence proffered by Plaintiff does not raise a genuine issue of fact regarding the dissimilarities between Plaintiffs' and Chavira's employment situations. *Id.* at 260. Consequently, Plaintiff has failed to prove a prima facie case of Title VII race discrimination. Summary judgment on Plaintiff's Title VII claim should therefore be granted in favor of Defendants.

ii.     Legitimate, Non-Discriminatory Reason

Nevertheless, even if Plaintiff can prove a prima facie case of discrimination, Defendants offer legitimate, non-discriminatory reasons for the adverse employment actions. *Willis*, 445 F.3d at 420. Defendants contend they eliminated Plaintiff's position on May 31, 2013 because of budgetary constraints. Budgetary constraints qualify as a legitimate non-discriminatory reason for an adverse employment action. *See Cooper v. Dall. Police Ass'n*, 278 F. App'x 318, 320 (5th Cir. 2008) (characterizing reining in spending as legitimate, nonretaliatory reason for act); *Fierros v. Tex. Dep't of Health*, 247 F. App'x 478, 479 (5th Cir. 2007) (recognizing budget shortfall as satisfying defendant's burden of presenting legitimate non-discriminatory reason for act). Commissioner

Madrigal testified in his deposition that the position was too costly and that the County Administrator's duties were duplicative of the county judge's duties. (Madrigal Depo. 43:20–44:2; 60:21–22; 85:25–86:5). Similarly, Commissioner Roland testified that the County Administrator position was not necessary, and he was opposed to the creation of new Caldwell County positions and expenditures. (Roland Depo. 19:22–20:1; 23:8–20, 26:25–27:11). Commissioner Munoz agreed that the County Administrator position was an unnecessary expenditure, and that a county of Caldwell County's size did not need a County Administrator. (Munoz Depo. 27:23–25). Further, the minutes of the September 26, 2011 regular meeting wherein the County Administrator position was created reflect a general concern regarding the budget and the creation of new positions. (Pltf. Ex. A-5).

Commissioner Munoz also points out Chavira received more notice of her termination and a severance package because she had been an employee of the County for 20 years. (Munoz Depo. 51:22–52:7). Experience is a legitimate, non-discriminatory reason for a disparity in treatment. *See Browning v. Sw. Research Inst.*, 288 F. App'x 170, 174 (5th Cir. 2008) (job levels, skill levels, training, and experience are legitimate, non-discriminatory reason for pay disparity); *Memberu v. Allright Parking Sys.*, 93 F. App'x 603, 307–08 (5th Cir. 2004) (twelve years of experience was legitimate, non-discriminatory reason for merit raises and higher value to employer). Accordingly, even if Plaintiff had established a prima facie case of discrimination, Defendants have articulated legitimate, non-discriminatory reasons why his department was abolished and he received less notice and no severance package. Accordingly, the burden shifts back to Plaintiff to show the reasons proffered by Defendants are pretextual. *Willis*, 445 F.3d at 420.

### iii.     Pretext

To show pretext, Plaintiff maintains that the elimination of the County Administrator

13

department did not actually save the County money, and that there are several indicators of the Commissioners' racial animus favoring Hispanics over Caucasians. A plaintiff must produce "substantial evidence" of pretext to carry ultimate burden of persuasion after a defendant produces legitimate, nondiscriminatory reasons for the challenged action. *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 403 (5th Cir. 2001).

Plaintiff first relies on Judge Bonn's testimony that abolishing the County Administrator's office, rather than saving the County money, actually costs the County money. For example, Judge Bonn testified Plaintiff helped the County settle an overtime dispute for $68,000, which he estimates would have cost more if it had ripened into a class action lawsuit. (Bonn Depo. 35:9–18). Additionally, according to Judge Bonn, the County paid a contractor one-and-a-half times Plaintiff's salary to complete a project Plaintiff could have completed himself if he had remained employed by the County. (Bonn Depo. 23:1–24:13; 35:23–36:2; 54:3–7). Plaintiff also notes that the Commissioners voted to reduce the Unit Road Department's budget the following year, and that the Unit Road Department never requested additional funding. (Pltf. Ex. A-9).

However, the Fifth Circuit has "repeatedly and emphatically stated that [anti-discrimination] laws 'are not vehicles for judicial second-guessing of business decisions.'" *Mato v. Baldauf*, 267 F.3d 444, 452 (5th Cir. 2001) (*abrogated on other grounds by Staub v. Proctor Hosp.*, 562 U.S. 411 (2011)) (quoting *Deines v. Tex. Dep't of Prot. & Regulatory Serv.*, 164 F.3d 277, 281 (5th Cir. 1999)). *See also Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (employment discrimination laws not intended to permit judicial second-guessing of business decisions, nor to transform courts into personnel managers). The mere existence of the possibility that keeping Plaintiff would have saved the County money does not make the stated reason for terminating Plaintiff's employment "false or unworthy of credence" and a pretext for discrimination. *See*

14

*Hernandez v. Johnson*, 514 F. App'x 492, 498 (5th Cir. 2013) (plaintiff's assertion that supervisor did not conduct cost-benefit analysis and made bad management decision did not demonstrate pretext where supervisor cited budgetary constraints as reason for adverse employment action); *Deines*, 164 F.3d at 281 ("Whether the employer's decision was the correct one, or the fair one, or the best one is not a question within the jury's province to decide.").

Even if the Commissioners' belief that eliminating the County Administrator department would save the County money is incorrect, it is nevertheless a legitimate, non-discriminatory reason. *See e.g., Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) ("[Employer] is allowed to be incorrect in its assessment of the facts it relies on to justify firing [the plaintiff], but it is not allowed to have any discriminatory animus against [him] in making its decision."). *See also Hervey v. Miss. Dep't of Edu.*, 404 F. App'x 865, 871 (5th Cir. 2010) ("[A]gain, an incorrect belief in the underlying facts may constitute a legitimate, nondiscriminatory reason for an adverse employment decision."); *Shackleford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999) ("[H]onest belief in a non-discriminatory reason for discharge, even if incorrect, is not discrimination."); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) (even incorrect belief that employee's performance is inadequate constitutes legitimate, nondiscriminatory reason for decision, question is not whether decision is erroneous, but whether decision was made with discriminatory intent); *Little*, 924 F.2d at 97 (employer's subjective belief in employee's poor performance, even if incorrect, inadequate constitutes a legitimate, non-discriminatory reason in absence of showing of improper motive).  This precedent precludes a finding of pretext based on the fact that the Commissioners believed the County Administrator department was an unnecessary financial burden on the County.

Plaintiff also offers as evidence of pretext a troubling mischaracterization of Commissioners

Madrigal and Roland's deposition testimony.  Plaintiff contends Commissioners Madrigal and Roland in their deposition testimony "admit they were trying to protect a Hispanic office holder against the best interests of the County in the Gonzalez matter." (Pltf. Resp. at 7).  The "Gonzalez matter" was a theft by a County employee whose supervisor was County Treasurer Vicki Gonzalez ("Gonzalez"), a Hispanic woman.  Commissioners Madrigal and Roland voted against requiring Gonzalez to forfeit bond proceeds in the amount of $45,000 to repay the County for her employee's theft.  Commissioner Madrigal testified he voted against the motion because "the [offending] employee had already [] gone to court and had agreed to pay the money back" and he felt it was not "necessary to make the County Treasurer lose her bond and make a spectacle of Caldwell County when the person that was accused of taking the money had already agreed to pay it back." (Madrigal Depo. 69:18–70:15).  He further explained, "I was defending a county-elected official, and I was protecting the integrity of the County." (Madrigal Depo. 70:22–24).  Similarly, Commissioner Roland testified, "I understand that Ms. Gonzalez [sic] was already paying the money back personally.  I understand that she [] had already made a few payments." (Roland Depo. 67:13–15). No reasonable reading of the proffered testimony would lead to the conclusion that the Commissioners "admit they were trying to protect a Hispanic office holder against the best interests of the County . . . . "  Accordingly, the undersigned refuses to entertain Plaintiff's assertion that the "Gonzalez matter" evidences racial animus to support pretext.

Plaintiff further contends Commissioner Madrigal made racial remarks to Judge Bonn.  An oral statement may be used to show pretext if it demonstrates discriminatory animus and was made by the person primarily responsible for an adverse employment action or who has influence over the person primarily responsible.  *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012); *Laxton v. Gap Inc.*, 333 F.3d 572, 583 (5th Cir. 2003).  Judge Bonn testified Commissioner Madrigal

16

"jokingly" said the Tejano Democratic Party's mission is "to put a Mexican in every office" when Commissioner Madrigal was selling raffle tickets for a Tejano Democratic Party fundraiser. (Bonn Depo. 69:17–25). It is undisputed that Commissioner Madrigal is one of those responsible for the adverse employment decision. Therefore, the issue is whether this comment evidences discriminatory animus.

It is unclear how the elimination of the County Administrator department would further the purported Tejano Democrat mission "to put a Mexican in every office," if the department was eliminated in its entirety. Moreover, Commissioner Madrigal's statement was indisputably about the Tejano Democratic Party, not the County or Plaintiff's employment. It is also unclear when the remark was made. Thus, Plaintiff has not shown the requisite connection between the remark and the timing or authority over the decision, to any decision concerning his employment. *See E.E.O.C. v. DynMcdermott Petroleum Ops. Co.*, 537 F. App'x 437, 443 (5th Cir. 2013) ("[T]he stray remarks doctrine remains intact where the plaintiff has failed to produce substantial evidence of pretext.); *Moore v. United Parcel Service, Inc.*, 150 F. App'x. 315, 318 (5th Cir. 2005) (remarks made six months before employee's discharge were not proximate in time to employment decision). This statement is insufficient to create a genuine issue of material fact that would preclude summary judgment. *See Squyres v. Heico Cos., L.L.C.*, __F.3d__ 2015 WL 1501050 (5th Cir. Apr. 2, 2015) (reasonable jury could not conclude comments demonstrated discriminatory animus where comments were sporadic and plaintiff did not find them offensive); *Bissett v. Beau Rivage Resorts, Inc.*, 442 F. Appx. 148, 153–54 (5th Cir. 2011) ("[E]ven assuming that [the] statement . . . is somehow relevant to [plaintiff's] discharge, this piece of evidence is insufficient to create an issue of material fact under either pretext or mixed motive theories.").

Accordingly, Plaintiff has not presented competent summary judgment evidence sufficient

to rebut the legitimate, non-discriminatory reasons proffered by Defendant for the abolition of his

position.  Nor has he provided sufficient competent evidence establishing discriminatory animus

motivated the actions of any of the Defendants.  *See Price v. Fed. Express Corp.*, 283 F.3d 715,

724–25 (5th Cir. 2002) (affirming grant of summary judgment for "fail[ure] to present evidence from

which a factfinder could infer racial discrimination"); *Rubinstein v. Admin. of Tulane Edu. Fund*, 218

F.3d 392, 400 (2000) (affirming grant of summary judgment based on "overall lack of any evidence

of discriminatory intent").  Summary judgment on Plaintiff's Title VII claim should therefore be

granted in favor of Defendants.

### B.      ADEA Retaliation Claim

The ADEA forbids an employer from "discharg[ing] any individual or otherwise

discriminat[ing] against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's age."  29 U.S.C. § 623(1)(a).  The ADEA

authorizes claims brought under a "disparate impact" theory, in which a plaintiff identifies a facially

neutral policy that nonetheless "fall[s] more harshly on one group than another," in this context older

employees.  *Smith v. City of Jackson*, 544 U.S. 228, 239–49 (2005) (quoting *Tex. Dep't of Cmty.*

*Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).

A plaintiff in an ADEA case may establish discrimination by the use of statistics if a "gross

disparity" in the treatment of employees based on age is shown. *Siler-Khodr v. Univ. of Tex. Health*

*Sci. Ctr.*, 261 F.3d 542, 546– 47 (5th Cir. 2001).  However, such statistics are probative only if the

plaintiff demonstrates the disparities are statistically significant.  *Anderson v. Douglas & Lomason*

*Co., Inc.*, 26 F.3d 1277, 1291–92 (5th Cir. 1994).  Moreover, although "[s]tatistical evidence can be

utilized by an individual disparate treatment plaintiff to help rebut the employer's non-discriminatory

explanation, more than statistics are usually necessary to rebut an employer's strong showing of a

legitimate, non-discriminatory reason" for an adverse employment action. *Bauer v. Albemarle Corp.*, 169 F.3d 962, 968 (5th Cir. 1999).

Further, the ADEA provides that it is unlawful for an employer to discriminate against any employee "because such individual . . . has opposed any practice made unlawful" under the ADEA. 29 U.S.C. § 623(d). In order to state a prima facie case of retaliation under the ADEA, a plaintiff must show (1) he engaged in activity protected by the ADEA; (2) an adverse employment action occurred; and (3) there was a causal connection between the participation in the protected activity and the adverse employment decision. *Wooten v. McDonald Transit Assoc., Inc.*, 775 F.3d 689, 694 (5th Cir. 2015). As it is undisputed an adverse employment action occurred, the undersigned will address the first and third elements.

Plaintiff contends the County's practice of paying dependent healthcare supplements for workers with children, while a facially neutral policy, has a disparate impact on workers over the age of 40. In Caldwell County, 16 of the 136 employees over age 40 receive healthcare supplements for dependent children, and 10 of the 71 employees under age 40 receive healthcare supplements for dependent children. (Def. Ex. 6-1, 6-2). The County pays $590.24 per month for each employee who receives healthcare supplements for dependent children, and each employee with dependent children pays $273.72 per month, regardless of age. (Def. Ex. 6-3). Plaintiff asserts that the over-40 age group as a whole receives fewer dependent–supplement dollars per capita than the under-40 age group. Plaintiff's calculation is as follows: The County spends $1,368.60 ($136.86 x 10) per month for the under-40 age group with dependents, and spends $2,189.76 ($136.86 x 16) for the over-40 age group with dependents. Therefore, Plaintiff argues, the County spends $19.28 per person in the entire under-40 age group ($19.29 each for 71 employees) and $16.10 per person in the entire over-40 age group ($16.10 each for 136 employees). (Pltf. Resp. at 19–20).

Plaintiff's argument is a stretch and not made stronger by Plaintiff's labored statistical analysis. The supplements at issue only benefit those employees with dependent children. The age of the County workforce and the number of dependents is constantly changing. Moreover, this benefit is not provided to qualified employees at the expense of any other employee. The plaintiff fails to identify how the supplement paid by the County to anyone with dependent children penalizes those over the age of 40. In fact, the supplement is equally available to anyone with dependent children regardless of whether the employee is more or less than 40 years of age. *See Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 403–04 (6th Cir. 2008) (quoting *City of Jackson*, 544 U.S. at 241) (failure to identify specific practice being challenged could result in employer liability for a "myriad of innocent causes that may lead to statistical imbalances"). While the undersigned appreciates Plaintiff's per-capita analysis, the fact remains that more employees over the age of 40 benefit from the County's policy than those employees under the age of 40. The statistical analysis provided by Plaintiff fails to support his argument that the County's dependent health care policy violates ADEA. Nevertheless, assuming Plaintiff in good faith believed that he was reporting an ADEA violation, Plaintiff's ADEA retaliation still fails for lack of a causal connection between the protected activity and the adverse employment action. *See Byers*, 209 F.3d at 428 (retaliation plaintiff must have only "a reasonabl[e] belief that the employer was engaged in unlawful employment practices," but need not prove that such practices were in fact unlawful (citations and internal quotation marks omitted)).

In support of a causal connection between Plaintiff's report to the Commissioners Court and the abolition of his position, Plaintiff offers Judge Bohn's testimony that Plaintiff's opposition to the County's practice was "part of the accumulation of things that led to the abolition of the position." (Bonn Depo. 69:1–11). However, there is no other evidence in the record to support this conclusion.

Plaintiff made the Commissioners Court aware of the purported ADEA violation on August 29, 2011—before he became County Administrator—and nearly two years before the abolition of the County Administrator department.  (Def. Ex. 17 at 7).  Therefore, as Plaintiff was hired for the County Administrator position *after* he engaged in purportedly protected activity, "no rational fact finder could conclude that [Plaintiff's] firing was casually related to his [protected activity]."  *Davis v. AMPCO Sys. Parking*, 748 F. Supp. 2d 683, 701 (S.D. Tex. 2010).

Moreover, Commissioners Madrigal, Munoz, and Roland all testified they were unaware of Plaintiff's position on the practice at the time they voted to abolish the County Administrator department.  (Madrigal Depo. 73:16–19; Munoz Depo. 35:17–21; Roland Depo. 75:1–8).  Judge Bonn's conclusory and unsupported testimony is therefore insufficient to show a causal connection between Plaintiff's protected activity and the adverse employment action.  *See Arango v. Telemundo El Paso*, 20 F. Supp. 3d 559, 563 (W.D. Tex. 2013) ("This burden is not satisfied . . . by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." (internal citations omitted)).  Accordingly, summary judgment on the ADEA retaliation claim should be granted in favor of Defendants.

### C.     Texas Government Code Chapter 554 Whistleblower Claim

The only remaining claim is Plaintiff's Chapter 554 whistleblower claim, which is based upon Plaintiff's termination following his report of the County's alleged theft of software services. TEX. GOV'T CODE § 554.002.  Pursuant to 28 U.S.C. § 1367, a federal court generally has supplemental jurisdiction over claims that are so related to the claims over which the court has original jurisdiction that they form part of the same case or controversy.  However, the Court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction.  *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 161 (5th Cir. 2012)

(quoting *Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595, 602 (5th Cir. 2009)). Because the summary judgment of Plaintiff's federal claims is warranted, the District Court should decline to exercise supplemental jurisdiction over his state law claim.

## V.    CONCLUSION

In sum, the undersigned finds Plaintiff has offered insufficient evidence to create a genuine issue of material fact for trial.  Specifically, Plaintiff has failed to create a genuine issue of material fact as to whether he was similarly situated to an employee outside his race who was treated preferentially.  Even if he had demonstrated he was similarly situated, he has not shown Defendants' legitimate, non-discriminatory reasons for the adverse employment actions are pretextual.  Plaintiff also failed to show a causal connection between his opposition to a purported ADEA violation and the abolition of the County Administrator department.  These evidentiary shortfalls are fatal to his Title VII cause of action and ADEA retaliation cause of action.  Because both causes of action over which the Court had original jurisdiction should be granted in favor of Defendants, the Court should decline to exercise supplemental jurisdiction over Plaintiff's Texas Government Code Chapter 554 cause of action.  Accordingly, Defendants' Motion for Summary Judgment should be granted in its entirety.

## VI.    RECOMMENDATION

The undersigned **RECOMMENDS** that the District Court **GRANT** Defendants' Motion for Summary Judgment.  (Clerk's Dkt. No. 41).

## VII.    OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See*

*Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

**SIGNED** on April 15, 2015.

_____

MARK LANE
UNITED STATES MAGISTRATE JUDGE